UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

GENERAL NUTRITION CORPORATION,          Civil Division
d/b/a GNC, INC.,
                                        No.

            Plaintiff,

      v.

EVANSTON INSURANCE COMPANY,             **JURY TRIAL DEMANDED**
and HOUSE OF DAVID DISTRIBUTORS,
INC.,

            Defendants.

## COMPLAINT

Plaintiff, General Nutrition Corporation d/b/a GNC, Inc. ("GNC"), avers the following in support of this Complaint:

1.      Plaintiff, GNC, is a Pennsylvania corporation with a principal place of business located at 300 Sixth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222.

2.      Defendant, Evanston Insurance Company ("Evanston"), is a stock insurance company duly organized and existing under the laws of Illinois, with its principal place of business at Ten Parkway North, Deerfield, Illinois 60015.

3.      Defendant, House of David Distributors, Inc. ("House of David"), is a Florida corporation with its principal place of business at 731 S. Kirkman Road, Orlando, Florida 32811.

### VENUE AND JURISDICTION

4.      Subject matter jurisdiction of this action is conferred by 28 U.S.C. § 1332(a):

        a.      There is diversity of citizenship between Plaintiff and all Defendants; and

:147738.1

b.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     This Court has personal jurisdiction over the Defendants by virtue of their regular and systematic contacts and dealings with Pennsylvania businesses, including the contacts and dealings with GNC that are the subject of this Complaint. The Defendants purposely directed their activities at residents of the forum state and purposely availed themselves of the privilege of conducting activities within Pennsylvania.

6.     Similarly, venue is proper in this Court because the Defendants purposely directed their activities at GNC, a resident of Pennsylvania, and purposely availed themselves of the privilege of conducting activities within Allegheny County and Pennsylvania.

**FACTUAL BACKGROUND**

**I.     Relationship Between the Parties**

7.     On June 1, 2005 and June 1, 2006, GNC and House of David entered into Purchasing Agreements, contract numbers 3170 and 3384, under which GNC would purchase from House of David select products, including a dietary supplement known as "Up Your Gas," which GNC then would sell to the general public as a vendor of these products. (*See* Purchasing Agreements attached hereto as Exhibits A and B; *see also* the "Vendor Book," incorporated into those Agreements and attached hereto as Exhibit C.)

8.     Under the terms of these Purchasing Agreements, House of David agreed to maintain a comprehensive General/Products Liability insurance policy and to name GNC as an additional insured under this policy.

9.     In addition, House of David agreed to provide indemnification to GNC.

10.    Defendant, Evanston, issued to House of David a written insurance policy, number SP830157, for the policy period March 29, 2007 to March 29, 2008 ("the Policy").  (*See* the Policy attached hereto as Exhibit D; *see also* Certificate of Liability Insurance attached hereto as Exhibit E.)

11.    As defined under the "Additional Insured – Vendors" Endorsement to the Policy, GNC is an Insured under the Policy:

> Section THE INSURED is amended to include as an Insured the following:
>
> any person or organization that is a vendor of the Named Insured (hereinafter referred to as "Vendor"), but only with respect to the sale in the regular course of the Vendor's business, of the Named Insured's products . . . .

12.    The Policy includes coverage for bodily injury and property damage liability:

**INSURING AGREEMENTS**

> **A.    Coverage A. – Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or the Extended Reporting Period . . . for Bodily Injury or Property Damage to which this Insurance applies caused by an Occurrence . . . .

13.    Accordingly, the Policy obligated Evanston to defend and indemnify GNC against a claim or lawsuit for damages because of bodily injury.

## II.    The DiMauro Claims and Litigation

14.    In January 2008, Laura DiMauro asserted a claim against GNC and House of David for personal injury allegedly arising out of her ingestion of the dietary supplement, "Up Your Gas."

15.     DiMauro asserted that she had purchased the product, "Up Your Gas," from GNC who sold the product in the regular course of its business.

16.     On February 26, 2008, GNC received a time-limit settlement demand from DiMauro.

17.     On March 11, 2008, GNC tendered DiMauro's demand to Evanston.

18.     On March 12, 2008, DiMauro also issued a time-limit demand upon House of David.

19.     Under correspondence dated April 14, 2008, Evanston accepted coverage and the defense of GNC regarding the DiMauro claim.

20.     Subsequently, without the consent or input of GNC, Evanston decided to tender to DiMauro, on behalf of House of David *only*, the limits of insurance coverage available under the Policy.

21.     Prior to tendering the Policy limits to DiMauro, Evanston failed to perform a substantive investigation into the merits of her alleged personal injury claim.

22.     Evanston settled the DiMauro claim and obtained a release on behalf of House of David *only*.

23.     On December 18, 2008, Dimauro and her husband, Charles DiMauro, filed a lawsuit, based on her alleged personal injury from ingesting "Up You Gas," against GNC and Nutrition Formulators, Inc., the manufacturer of "Up Your Gas," in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida at Case No. 08-79760 CA 10.

24.     Evanston failed and/or refused to indemnify and fully defend GNC in connection with this lawsuit.

25.     Likewise, despite written demands from GNC, House of David failed and/or refused to defend and indemnify GNC against the DiMauros' claims, as required under the Purchase Agreements.

26.     During the course of the DiMauro litigation, GNC expended out-of-pocket attorney's fees and litigation costs in excess of $8,953.38.

27.     In January 2010, GNC and the DiMauros entered into a Settlement Agreement and Release, under which GNC issued a settlement payment in the sum of $67,500.00.

28.     Prior to settling, GNC sought contribution from Evanston and House of David to give both an opportunity to subsidize the settlement proceeds, but both refused.

29.     In addition, GNC has expended a considerable sum for attorney's fees while attempting to recover from Evanston and House of David all the sums to which it is entitled under the Policy, Agreements, and the law.

## COUNT I
### GENERAL NUTRITION CORPORATION D/B/A GNC, INC. V. EVANSTON INSURANCE COMPANY
### BREACH OF CONTRACT

30.     GNC incorporates by reference paragraphs 1 though 29 above as though set forth fully at length herein.

31.     The Policy provides that Evanston would defend and indemnify GNC in actions arising from bodily injury related to sale of House of David products.

32.     Accordingly, GNC tendered the DiMauro claim – arising from the sale of House of David's product, "Up Your Gas" –  to Evanston for defense and indemnification.

33.     Evanston failed to honor its obligations to defend and indemnify GNC for the total sum of costs, expenses, and liabilities which GNC became obligated to pay.

34.     GNC has complied with all of the terms and conditions precedent contained in the Policy and, therefore, is entitled to the full benefit of the insurance coverage provided by said Policy.

35.     As a direct and proximate result of the conduct of Evanston, GNC has been deprived of the benefit of the applicable insurance coverage for which substantial premiums were paid.

36.     Evanston's breach of the insurance contract has been the legal and proximate cause of actual damages to GNC in an amount to be determined at the time of trial, but no less than $75,000, including but not limited to actual and consequential damages, attorney's fees, and other costs incurred in connection with the DiMauros' claim and litigation, plus interest.

WHEREFORE, Plaintiff demands judgment in its favor and against this Defendant in an amount in excess of $ 75,000.00, together with interest, costs of suit and such other relief as the Court deems just and proper.

## COUNT II
### GENERAL NUTRITION CORPORATION D/B/A GNC, INC. V. EVANSTON INSURANCE COMPANY
### BAD FAITH

37.     GNC incorporates paragraphs 1 through 36, above, as though fully set forth herein.

38.     At all times relevant hereto, Evanston had a duty, under Florida and Pennsylvania law, to act fairly, honestly, and in good faith toward its insured.

39.     At all times relevant hereto, GNC was an "insured" as defined under the Policy and as intended within the meaning of Florida Statute § 624.155, 42 Pa. C.S.A. § 8371, and Pennsylvania common law.

40.     The claims asserted by the DiMauros were within the scope of the Policy's coverage.

41.     GNC submitted a demand to Evanston for defense and indemnification against the DiMauros' claims and lawsuit.

42.     Initially, Evanston accepted the defense of GNC regarding the DiMauro claim.

43.     Nevertheless, Evanston thereafter denied that it had an obligation to fully defend and indemnify GNC regarding the DiMauro claim.

44.     Evanston has undertaken a course of action which has been designed to refuse – unilaterally and without justification – GNC's claim for defense and indemnification in the DiMauro litigation and, accordingly, has caused GNC financial hardship.

45.     Evanston's reasoning and rationale for denying a defense and indemnification to GNC is contrary to Florida and Pennsylvania law and public policy.

46.     Evanston has acted in bad faith towards its insured in violation of Florida Statutes §§ 624.155 and 626.9541, 42 Pa. C.S.A. § 8371, and Pennsylvania common law, in general as outlined above and in particular as follows:

     a. In not attempting in good faith to settle claims when, under all circumstances it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for its insured's interests;

     b. In failing to adopt and implement standards for the proper investigation of claims;

     c. In failing to acknowledge and act promptly upon communications with respect to claims;

     d. In failing to fully investigate the claims asserted against its insured;

     e. In failing to adequately communicate with its insured;

     f. In failing to keep its insured informed of the claim resolution process;

g.    In failing to advise its insured of settlement opportunities;

h.    In failing to advise its insured as to the probable outcome of litigation and failing to advise the insured of steps it might take to avoid the same;

i.    In refusing to provide the available benefits under the policy without a reasonable basis to do so;

j.    In making material misrepresentations to an insured, for the purpose and with the intent of effecting settlement of claims, loss, or damage under the Policy on less favorable terms than those provided in, and contemplated by, such Policy;

k.    In denying claims without conducting reasonable investigations based upon available information;

l.    In failing to exercise the utmost good faith in discharging its statutory and contractual duties;

m.    In engaging in unfair claims settlement and insurance practices in violation of common law and statutory law;

n.    In wilfully neglecting to consider or process evidence;

o.    In forcing GNC to incur substantial liability in connection with the DiMauro litigation;

p.    In abandoning GNC at a time when it was exposed to substantial defense costs and substantial liability exposure; and

q.    In compelling GNC to institute litigation to recover amounts due under the insurance policy.

47.    It is believed and, therefore, averred that some or all of the above-itemized violations occurred with such frequency as to indicate a general business practice and that these acts were willful, wanton, and malicious or in reckless disregard for the rights of any insured.

WHEREFORE, Plaintiff requests that this Honorable Court grant judgment to it and against this Defendant in an amount in excess of $ 75,000.00 and:

1)  Award interest;

2)  Award punitive damages against the insurer;

3)  Assess court costs and attorney's fees against the insurer; and

4)  All other damages allowed by law.

## COUNT III
### GENERAL NUTRITION CORPORATION D/B/A GNC, INC. V. HOUSE OF DAVID
### BREACH OF CONTRACT

48.  GNC incorporates by reference paragraphs 1 though 47 above as though set forth fully at length herein.

49.  GNC has been obligated to pay damages to the DiMauros for bodily injury allegedly arising out of ingestion of product purchased and resold by GNC under the Purchasing Agreements with House of David.

50.  GNC also has incurred attorney's fees and other expenses in defending against the DiMauros' claims and lawsuit.

51.  GNC has demanded that, pursuant to the express terms of the Purchasing Agreements, House of David indemnify GNC for these costs.

52.  In breach of the Purchasing Agreements, House of David has failed and/or refused to indemnify GNC.

WHEREFORE, Plaintiff demands judgment in its favor and against this Defendant in an amount in excess of $ 75,000.00, together with interest, costs of suit and such other relief as the Court deems just and proper.

Respectfully submitted,
**ROBB LEONARD MULVIHILL LLP**

By:   s/Dennis St. J. Mulvihill
     Dennis St. J. Mulvihill, Esquire
     PA. I.D. #16411
     Erin J. Fucci, Esquire
     PA ID #86472
     500 Grant Street, 23rd Floor
     Pittsburgh, PA 15219
     Phone:  (412) 281-5431
     *Attorneys for Plaintiff,*
     *General Nutrition Corporation*
     *d/b/a GNC, Inc.*

:147738.1